NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CLEMENTE RANCH HOMEOWNERS ASSOCIATION,
*Plaintiff/Appellant*,

*v.*

TERESA J. JOHNSTONBAUGH,
*Defendant/Appellee*.

No. 1 CA-CV 20-0260
FILED 12-31-2020

Appeal from the Superior Court in Maricopa County
No. LC2019-000323-001
The Honorable Douglas Gerlach, Judge (Retired)

**AFFIRMED**

COUNSEL

Krupnik & Speas, Phoenix
By Lynn M. Krupnik, Timothy J. Krupnik
*Counsel for Plaintiff/Appellant*

Teresa J. Johnstonbaugh, Chandler
*Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Chief Judge Peter B. Swann joined.

---

**W I N T H R O P**, Judge:

**¶1**　　　　The Clemente Ranch Homeowners Association (the "Association") appeals a superior court order affirming an administrative ruling by the Arizona Department of Real Estate that the Association breached its community bylaws by failing to maintain a certain wall on the border of property owned by Teresa J. Johnstonbaugh. The Association argues it had no obligation to maintain the wall because the wall is not adjacent to a community Common Area as defined in the bylaws. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　The parties' dispute revolves around a wall located behind Johnstonbaugh's home that has been in disrepair for a number of years.[1] Article 3.11(A)(5) of the Association's bylaws requires the Association to "[p]rovide for the operation, care, upkeep and maintenance of all of the Common Area" of the community. The Declaration of Covenants, Conditions and Restrictions for Clemente Ranch (the "CC&Rs") Section 1.11 defines "Common Area" as including certain identified plats, along with "the Project boundary walls located adjacent to Common Areas on the boundary lines of Lots."

**¶3**　　　　Johnstonbaugh's home lies on a roughly pentagonal lot next to a Common Area plat:

---

[1]　　　　Meeting minutes of the Association's Board first recognized the problems with various walls in the community in 2006 and noted concerns again in 2011, 2012, 2013, 2015, and additional years following.



The specific dispute between the parties is whether the Association is obligated to repair Wall A pursuant to Article 3.11(A)(5) of the bylaws. Johnstonbaugh argues Wall A is a wall "adjacent" to the Common Area as defined in Section 1.11 of the CC&Rs. The Association contends it is not obligated to repair Wall A, because only Wall B is "adjacent" to the Common Area.

**¶4**		In April 2019, Johnstonbaugh submitted a Homeowners Association Dispute Process Petition to the Arizona Department of Real Estate. Johnstonbaugh alleged that by failing to timely repair Wall A, the Association had breached Article 3.11(A)(5) of the bylaws. An administrative hearing was conducted in July 2019. The Administrative Law Judge ("ALJ") later issued a ruling finding the Association violated Article 3.11(A)(5) of the bylaws by failing to maintain Wall A.

**¶5**		The Association filed a Notice of Appeal with the superior court. The superior court affirmed the ALJ decision that the Association was responsible for maintenance/repair of Wall A. The Association timely appealed to this Court. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-913, -2101(A)(1).

**ANALYSIS**

*I.		Standard of Review*

**¶6**		On appeal of an administrative decision, we "determine whether the record contains evidence to support the trial court's judgment and in so doing reach the underlying question of whether the administrative agency acted arbitrarily, capriciously, or in abuse of its discretion." *Sanders v. Novick*, 151 Ariz. 606, 608 (App. 1986). We do not reweigh the evidence, nor reevaluate the credibility of witnesses. *Sigmen v. Ariz. Dep't of Real Est.*, 169 Ariz. 383, 386 (App. 1991). We defer to the ALJ's

factual findings, but we must also independently examine the record to determine whether substantial evidence supports the ruling at issue. *Holcomb v. Ariz. Dep't of Real Est.*, 247 Ariz. 439, 443, ¶ 9 (App. 2019).

**¶7**        We review *de novo* questions of law, including the interpretation of a contract. *Id.*; *Earle Invs., LLC v. S. Desert Med. Ctr. Partners*, 242 Ariz. 252, 255, ¶ 14 (App. 2017); *see also Rowland v. Union Hills Country Club*, 157 Ariz. 301, 304 (App. 1988) (holding the governing documents of a private organization "constitute a contract between the members and the organization").

**¶8**        "[W]e view the evidence in the light most favorable to upholding the [administrative] decision and will affirm if any reasonable interpretation of the record supports the decision." *Lewis v. Ariz. State Pers. Bd.*, 240 Ariz. 330, 334, ¶ 15 (App. 2016); *accord Glaze v. Marcus*, 151 Ariz. 538, 540 (App. 1986) ("We will affirm the trial court's decision if it is correct for any reason, even if that reason was not considered by the trial court.").

### II.        *The Association's Responsibility to Maintain Wall A*

**¶9**        The issue we must determine on appeal is whether Wall A is a "Project boundary wall[] located adjacent to Common Areas on the boundary lines of Lots," pursuant to Section 1.11 of the CC&Rs. If Wall A fits within that definition, then the Association is required to maintain Wall A pursuant to Article 3.11(A)(5) of the Association's bylaws.

**¶10**        Unfortunately, the CC&Rs do not precisely define the phrase "Project boundary walls" in any discrete fashion. The term "Project" is defined in Section 1.24 of the CC&Rs as "the Property together [with] all buildings and other Improvements located thereon and all easements, rights, and privileges appurtenant thereto." Black's Law Dictionary defines a "boundary" as "[a] natural or artificial separation that delineates the confines of real property." *Boundary*, Black's Law Dictionary (11th ed. 2019). Taken together, we understand "Project boundary walls" to mean those walls along the outermost border of the whole Clemente Ranch Property, in other words: those outer walls confining the Project. Accordingly, Johnstonbaugh's Wall A, which rests on the southern border of the Project and abuts the public sidewalk beside Queen Creek Road, is a Project boundary wall.

**¶11**        Our analysis does not end there, however, as Section 1.11 of the CC&Rs limits the definition of "Common Area" to include only those Project boundary walls "located *adjacent* to Common Areas on the

boundary lines of Lots." (Emphasis added). Accordingly, we must next determine whether Wall A is located adjacent to a Common Area.

¶12 The CC&Rs do not define "adjacent." The Association argues "adjacent" means "bordering and sharing a common lot/tract line," suggesting that other Sections of the CC&Rs where "adjacent" is used support this interpretation (e.g., Section 5.9: allowing a vacant lot to "be split between the Owners of the lots adjacent to such lot"). On the other hand, Johnstonbaugh cites a previous edition of Black's Law Dictionary, which defines "adjacent" as "[l]ying near or close to; contiguous," and goes on to clarify in that definition the difference between "adjacent" and "adjoining." *Adjacent*, Black's Law Dictionary (2d ed. 1910).[2] The current version of Black's Law Dictionary makes a similar distinction between the two terms, defining "adjacent" as "[l]ying near or close to, but not necessarily touching. Cf. ADJOINING," and defining "adjoining" as "[t]ouching; sharing a common boundary; CONTIGUOUS. Cf. ADJACENT." *Adjacent* and *adjoining*, Black's Law Dictionary (11th ed. 2019).

¶13 Here, the distinction between "adjacent" and "adjoining" is notable because the term "adjoining" is used elsewhere in the CC&Rs. The most prominent use of "adjoining" is in Article VII of the CC&Rs, which explains homeowners' responsibilities regarding "Party Walls" between "adjoining lot Owners" and defines a "Party Wall" as a "wall or fence, any part of which is placed on a dividing line between separate lots." We cannot ignore the differing use of the terms "adjoining" and "adjacent" throughout the CC&Rs.

¶14 Our purpose in interpreting a contract is to determine and enforce the parties' intent. *U.S. W. Commc'ns, Inc. v. Ariz. Corp. Comm'n*, 185 Ariz. 277, 280 (App. 1996). In determining the parties' intent, we look to the plain meaning of the words as viewed in the context of the contract as a whole. *United Cal. Bank v. Prudential Inc. Co. of Am.*, 140 Ariz. 238, 259 (App. 1983). In using "adjacent" in some Sections of the CC&Rs and "adjoining" in others, we must assume the intent was to assign different meanings to each word. Accordingly, we reject the Association's proposed definition of "adjacent," which essentially mirrors the definition of "adjoining"; instead, we interpret "adjacent" as used here to mean "lying near or close to" and "adjoining" to mean "sharing a common boundary." With this

---

[2] It appears Johnstonbaugh cites the second edition of Black's Law Dictionary simply because it was what she was able to access for free online and not because the date of the edition is legally significant.

understanding, Johnstonbaugh's Wall A, which touches the corner of a Common Area, is *adjacent* to that Common Area. As such, Wall A falls within the definition of Common Area pursuant to Section 1.11 of the CC&Rs and the Association is obligated to maintain/repair Wall A pursuant to Article 3.11(A)(5) of the bylaws.

### III.   *Parol Evidence and Parties' Actions under the Contract*

¶15      The Association argues the ALJ and superior court decisions were contrary to law because both decisions "fail[ed] to apply principles of contract construction" because they "used parole [sic] evidence" without first finding the terms of the CC&Rs ambiguous. The Association argues the ALJ and superior court were limited to "the four corners of the contract" in interpreting the meaning of the CC&Rs and characterizes any outside evidence used to interpret the CC&Rs as parol evidence.

¶16      The Association misconstrues the doctrine of parol evidence. "The parol evidence rule, as traditionally stated, renders inadmissible any evidence of prior or contemporaneous oral understandings and of prior written understandings, which would contradict, vary or add to a written contract . . . ." *Pinnacle Peak Devs. v. TRW Inv. Corp.*, 129 Ariz. 385, 389 (App. 1980) (quoting Robert Childres & Stephen J. Spitz, *Status in the Law of Contract*, 47 N.Y.U. L. Rev. 1 at 6-7 (1972)). Evidence of actions the parties have taken under the contract is not inadmissible parol evidence. As the superior court properly explained when the Association raised this argument below, "[I]t is well established that the acts of the parties under the contract, before disputes arise, are the best evidence of the meaning of doubtful contractual terms." *Godbey v. Roosevelt Sch. Dist. No. 66*, 131 Ariz. 13, 21 (App. 1981).

¶17      Here, prior actions of the parties support our conclusion that the Association is obligated to maintain Wall A. In 2012, the Association notified Johnstonbaugh that it would unilaterally be adding support columns to reinforce Wall A and it would pay for the repair; however, such repair was not undertaken at that time. In 2019, the Association again not only signaled but exercised its stated right of control and tore down Wall A, replacing it with a chain-link fence. A few months later, the Association again unilaterally exercised control over Wall A by adding plywood to cover the chain-link fencing.[3]

---

3       Wall A remained in this state as of the date of the administrative hearing.

¶18        Johnstonbaugh testified at the administrative hearing that she has never been allowed to exert control over Wall A and explained she was not allowed to paint it to match her home as other homeowners in the complex may paint adjoining walls.  The Dedication on the Plat for Johnstonbaugh's lot provides, "The maintenance of the landscaping within the public right-of-way to back of curb shall be the responsibility of the Clemente Ranch Homeowner's Association or the abutting lot/tract/parcel owner"; however, both parties agree that the Association has always maintained the landscaping and irrigation on the south side of Wall A along the public right of way.  Johnstonbaugh testified at the hearing that, as such, she is not allowed to adjust that landscaping.

¶19        The ALJ and superior court did not err in considering the parties' conduct under the contract to assist in its interpretation.  Moreover, we find substantial evidence supported the judgment that the Association is obligated to maintain and/or repair Wall A.  *See Holcomb*, 247 Ariz. at 443, ¶ 9.

## CONCLUSION

¶20        For the foregoing reasons, we affirm.

